**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------------x
:
In re:                                                                   :     Chapter 11
:
HO WAN KWOK, *et al.*,[1]                                                 :     Case No. 22-50073 (JAM)
:
                              Debtors.                                    :     (Jointly Administered)
:
-------------------------------------------------------------------------x
:
LUC A. DESPINS, CHAPTER 11                                                :
TRUSTEE,                                                                  :
                                                                         :     Adv. Proceeding No. 24-05252
                              Plaintiff,                                  :
v.                                                                       :
                                                                         :
GETTR USA, INC,                                                          :
                                                                         :
                              Defendant.                                  :
-------------------------------------------------------------------------x

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY**
**OF DEFAULT JUDGMENT AGAINST DEFENDANT**
**GETTR USA, INC**

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (each a "Civil Rule"), made applicable by Rule 7055 of the Federal Rules of Bankruptcy Procedure (each a "Bankruptcy Rule"), and Rule 7055-1 of the Local Bankruptcy Rules for the District of Connecticut (each a "Local Rule"), Luc A. Despins, as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor") and plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), respectfully submits this memorandum of law in support of his motion (the "Motion") for entry of default judgment against defendant Gettr USA, Inc (the "Defendant"), filed concurrently herewith.  In further support of the Motion, the Trustee submits the *Declaration of Erin Ryan* (the "Ryan Declaration"), also filed concurrently herewith.

**PRELIMINARY STATEMENT**

1.      By summons and complaint dated February 15, 2024 the Trustee commenced this action to recover $21,000,000.00 in unauthorized postpetition transfers made by the Debtor through his beneficially owned company, Hamilton Opportunity Fund SPC to the Defendant (the "Original Complaint").  On February 13, 2025, the Trustee filed an amended complaint, seeking to recover $35,659,193.40 in fraudulent and unauthorized postpetition transfers made by the Debtor though his beneficially owned companies Hamilton Opportunity Fund SPC, GFNY Inc, and ACA Capital Group Ltd (the "Amended Complaint").  Despite having been validly served, the Defendant failed to timely answer either the Original or the Amended Complaint.

2.      On March 2, 2026, the Clerk of the Court entered default against the Defendant. By this Motion, the Trustee seeks a default judgment against the Defendant in the amount of $35,659,193.40.

3.       Entry of a default judgment is proper.  As set forth in the Ryan Declaration, being filed concurrently herewith and incorporated herein by reference, the Defendant was properly

served with the Summons and Original Complaint on March 4, 2024. The Defendant failed to answer or respond to the Summons and Complaint.

4.      The Trustee filed his Amended Complaint, to which the Defendant also failed to answer or otherwise respond, and, as a result, default entered against the Defendant.

5.      Moreover, the Trustee has made a *prima facie* case for relief on his fraudulent transfer claims by alleging (i) transfers of an interest in property by the Debtor—specifically, through his alter ego GFNY Inc ("GFNY") and (ii) that the Debtor made such transfers with actual fraudulent intent to hinder, delay, and/or defraud his creditors.

6.      Additionally, the Trustee has made a *prima facie* case for relief on his claims to avoid and recover unauthorized postpetition transfers by alleging: (i) transfers of property of the estate—specifically, those made via the Debtor's alter ego, GFNY, as well as his beneficially owned companies, Hamilton Opportunity Fund SPC ("Hamilton") and ACA Capital Group Ltd ("ACA Capital," and together with GFNY and Hamilton, the "Relevant Alter Egos"); and (ii) that these transfers were not authorized by the Court or under the Bankruptcy Code.

7.      The Trustee is thus entitled to a final judgment of $35,659,193.40 against the Defendant and respectfully requests that the Motion be granted.

8.      The Trustee is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961, and prejudgment interest from February 15, 2024, the date the Trustee commenced this adversary proceeding at the prime rate as of February 15, 2024, which was 8.5%. 28 U.S.C. § 1961(a) mandates the award of post-judgment interest, and prejudgment interest may be awarded in an exercise of the Court's discretion. The Court should exercise that discretion here and award prejudgment interest.

## PROCEDURAL HISTORY

### A.   Appointment of Chapter 11 Trustee

9.      On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thus commencing this Chapter 11 Case.

10.     On June 15, 2022, the Court entered an order directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  [Main ECF No. 465].[2]

11.     On July 7, 2022, the United States Trustee filed the notice and application with respect to the appointment of Luc A. Despins as the chapter 11 trustee in the Debtor's case pursuant to section 1104(d) of the Bankruptcy Code.  [Main ECF No. 515].  On July 8, 2022, the Bankruptcy Court entered an order granting the appointment of the Trustee in the Debtor's case.  [Main ECF No. 523].

### B.   Trustee Serves Summons and Original Complaint, and Defendant Fails to Respond

12.     On February 15, 2024, the Trustee commenced this adversary proceeding by filing the Original Complaint [Adv. ECF No. 1][3] against Defendant.[4]  On March 13, 2025, the Trustee filed the Amended Complaint.  The First Claim in the Amended Complaint seeks to avoid and recover fraudulent transfers made by the Debtor through GFNY in an aggregate amount of not less than $59,453.40 from the Defendant as actual fraudulent transfers under sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code.  The Second Claim seeks to avoid and recover fraudulent transfers made by the Debtor through GFNY in an aggregate amount of not less than $59,453.40 from the Defendant as actual fraudulent transfers under the New York Debtor and Creditor Law and sections

---

[2]   References to "Main ECF No. ___" mean and refer to items on the docket of the main bankruptcy case, No. 22-50073 (Bankr. D. Conn.).

[3]   References to "Adv. ECF No. ___" mean and refer to items on the docket of the above-captioned adversary proceeding.

[4]   Ryan Decl., ¶ 3 and Ex. 1.

544(b) and 550(a) of the Bankruptcy Code.  The Third Claim seeks to avoid and recover unauthorized postpetition transfers made by the Debtor through GFNY, Hamilton, and ACA Capital in an aggregate amount of not less than $35,599,740.00 under sections 549 and 550(a)(1) of the Bankruptcy Code.

13.     On February 26, 2024, the Clerk of the Court issued a Summons in an Adversary Proceeding [Adv. ECF No. 4][5] (the "Summons," and together with the Original Complaint, the "Served Documents"), directing the Defendant to respond to the Original Complaint within 60 days from the date of service.

14.     On March 4, 2024, the Served Documents were sent via first-class U.S. Mail, via UPS or Federal Express overnight delivery, and via email on the Defendant at the following addresses: 3 Columbus Circle, New York, NY 10019, Attn: Officer, Managing or General Agent; c/o C T Corporation System, 28 Liberty Street, New York, NY 10005; c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; and to Justin Weddle at jweddle@weddlelaw.com.  The foregoing is memorialized in the Trustee's Certificate of Service [Adv. ECF No. 9] (the "Certificate of Service").  *See* Ryan Decl., ¶ 5-6 and Ex. 3.

15.     Having been validly served on March 4, 2024, pursuant to the Summons, the Defendant originally had a deadline of May 3, 2024 to answer or otherwise respond to the Original Complaint.

16.     On February 13, 2025, the Trustee filed the Amended Complaint [Adv. ECF No. 20],[6] to which the Defendant had a deadline of February 27, 2025 to answer or otherwise respond.

---

[5]     Ryan Decl., ¶ 4, Ex. 2
[6]     Ryan Decl., ¶ 7, Ex. 4

17.     The Trustee's claims against the Defendant, however, were stayed pursuant to the Court's Order Directing Parties to Mediation, Appointing the Honorable James J. Tancredi as Mediator, and Amending Avoidance Action Procedures Order [Main Case ECF No. 3163], which stay was lifted as ordered by the Court at a hearing on November 3, 2025, and as memorialized in the Court's Order: (A) Granting in Part Chapter 11 Trustee's Motion for Entry of Order Amending Avoidance and Mediation Procedures; and (B) Entering Avoidance Actions Pretrial Order [Main Case ECF No. 4828] (the "Avoidance Pretrial Order").

18.     Pursuant to the Avoidance Pretrial Order (at p. 8), the Defendant's deadline to file an Answer was December 15, 2025. The Defendant filed no such answer or response by the deadline and has still not done so to date.

19.     On February 26, 2026, the Trustee requested entry of default against the Defendant for failure to plead or otherwise defend pursuant to Civil Rule 55(a).  [Adv. ECF No. 29].  *See* Ryan Decl., ¶ 11 and Ex. 5.  On March 2, 2026, the Clerk entered the default.  [Adv. ECF No. 30]. *See* Ryan Decl., ¶ 12 and Ex. 6.

## SUMMARY OF FACTS
## GIVING RISE TO CLAIMS AGAINST DEFENDANT

### A.     Debtor's Prolific Use of Shell Companies

20.     It has been well-documented in this chapter 11 case that the Debtor, who filed for bankruptcy claiming to own virtually no material assets, has for years been a prolific user of shell companies, purportedly owned by his family members, including Defendant, or business subordinates, to shield his assets and activities from creditors.  The Debtor's "shell game" has allowed him to continue to deny ownership of assets, refuse to pay debts, and—until his arrest by the FBI and subsequent criminal conviction—live a life of luxury.  Am. Compl. ¶ 13, 15, 18, 30, 32.

21.     In the Amended Complaint, the Trustee identifies multiple companies the Debtor used to shield assets and/or defraud creditors, including the Relevant Alter Egos.  Am. Compl. ¶¶ 13, 23, 37. The Trustee previously commenced separate adversary proceedings seeking declaratory judgments that GFNY, Hamilton, and ACA Capital are and always were the Debtor's alter egos. *See Despins v. ACA Capital Group Ltd*, et al. [Adv. Proc. No. 24-05249, Docket No. 106] ("Omnibus Alter Ego Adversary Proceeding").

### i.     GFNY, ACA Capital, and Hamilton

22.     On February 12, 2024, the Trustee asserted claims for declaratory judgments that: (a) "GFNY, Inc. is an alter ego of Debtor" such that any and all assets held by GFNY, Inc. constituted property of the Debtor's estate [*Id.* at Fifteenth Claim]; (b) the Debtor is the "true beneficial owner of ACA Capital" such that ACA Capital and its assets are and were at all relevant times property of the Debtor [*Id.* at Twenty-Sixth Claim]; and (c) "Hamilton Opportunity Fund was controlled by the Debtor through his agents" and the "Debtor is the true beneficial owner of Hamilton Opportunity Fund" and "of assets held under the name of Hamilton Opportunity Fund" such that those assets "are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate [*Id.* at Twenty-Ninth Claim].

23.     The Trustee also alleged that GFNY is equitably owned by the Debtor's agents, and that the Debtor operated a "G Fashion" clothing brand through a network of affiliated entities, including GFNY. [Adv. Proc. No. 24-05249, ECF No. 106, Fifteenth Claim]. The Trustee further alleged that GFNY functioned as the Debtor's alter ego, was managed from the Debtor's offices, and used the same office address as the Debtor and other entities alleged to be alter egos of the Debtor. [*Id.*] The Trustee also alleged that GFNY was used by the Debtor to make payments to certain supporters and to entities "nominally controlled by them," in transactions unrelated to G Fashion and its affiliated entities. [*Id.*]

24.    In support of these allegations, the Trustee cites the U.S. Government's superseding indictment dated April 24, 2024, which alleges that the Debtor exercised control over various entities, including GFNY, which were among the "interrelated and overlapping entities that form the G Enterprise,"[7] and that these entities "obtained fraud proceeds, laundered those proceeds, spent fraud proceeds on expensive and luxury items, vehicles and property for the benefit of [the Debtor] and his family, used fraud proceeds to promote the G Enterprise, and used fraud proceeds to operate and manage the G Enterprise." [Adv. Proc. No. 24-05249, ECF No. 1 ¶ 60].

25.    On November 19, 2024, the Relevant Alter Egos, among others, filed a motion to dismiss for failure to state a claim, contending, among other things, that the Trustee failed to sufficiently plead that GFNY was the Debtor's alter ego, or that ACA Capital and Hamilton were beneficially owned by the Debtor [Adv. Proc. No. 24-05249, ECF No. 114].

26.    On April 23, 2025, the Court denied the motion to dismiss. [Adv. Proc. No. 24-05249, ECF No. 133]. In doing so, the Court held that the Trustee had sufficiently alleged that GFNY was the Debtor's alter ego and beneficially owned by the Debtor.  Specifically, the Court held that the Trustee plausibly alleged that GFNY, (i) "… GFNY … w[as] only ephemerally capitalized as monies transferred between shell companies for no consideration with no relationship to the shell companies' alleged business purposes"; (ii) "… GFNY … did not observe corporate formalities"; (iii) "the Individual Debtor siphoned funds from … GFNY… ."; (iv) "… GFNY … w[as] mere façad[e] used by the Individual Debtor to insulate himself from liability for his solicitations for investment and to shield assets from his creditors"; and (iv) "the Individual Debtor has used the corporate form of … GFNY …  to hinder, delay, or defraud his creditors."

---

[7]    G Enterprise refers to "series of complex fraudulent and fictious business and investment opportunists that connected dozens of interrelated entities, which allowed the defendants and their co-conspirators to solicit, launder, and misappropriate victim funds." (Adv. Proc. No. 24-05249, ECF No. 1 ¶ 41).

8

[*Id.* at 28-29]. The Court also found that the Trustee plausibly alleged facts and circumstances establishing the intent that ACA Capital and Hamilton and their assets were held in trust for the Debtor, and thus beneficially owned by him. [*Id.* at 30].

27.     Accordingly, the Court noted that the Trustee had plausibly alleged under Delaware law that GFNY is the Debtor's alter ego, and that, under English Law, ACA Capital and Hamilton are beneficially owned by the Debtor. [Adv. Proc. No. 24-05249, ECF No. 133 at 29-30].

**B.      Fraudulent Transfers to Defendant**

28.     As alleged in the Amended Complaint, the Debtor made the Prepetition Transfers with the actual intent to hinder, delay, or defraud his creditors.  Am. Compl. ¶¶ 41-42, 45-46.  The Debtor's fraudulent intent is readily apparent based on the following facts, among others:

    a.  the Prepetition Transfers were effectuated using one of the Debtor's beneficially owned entities, the Relevant Alter Egos, which the Court determined the Debtor used to keep his valuable assets from the reach of his creditors (Am. Compl. ¶¶ 15, 23, 32, 42, 46);

    b.  the Debtor used the Relevant Alter Egos to surreptitiously make the Prepetition Transfers so that his creditors would not become aware of the transfers (*id.*);

    c.  the  Transfers helped the Debtor maintain his and his family members' opulent lifestyles and clandestine business dealings, while allowing the Debtor to simultaneously claim he owns no material assets (*id.* at ¶¶ 23, 33);

    d.  at the time of the Prepetition Transfers, the Debtor was facing significant claims by creditors, including PAX, which sued the Debtor in New York (*id.* ¶¶ 22, 42. 46); and

   e. the Debtor was undercapitalized at the time of the Prepetition Transfers (*id*. ¶¶ 42, 46).

29. As alleged in the Amended Complaint, the Postpetition Transfers were not authorized by the Bankruptcy Court or under the Bankruptcy Code. (Am. Compl. ¶ 51).

**LAW AND ARGUMENT**

**A.** **Legal Standard Applicable to Motion for Default Judgment**

30. A party seeking a default judgment must apply to the Court for relief, as the Trustee does here.  Fed. R. Civ. P. 55(b)(2).  Once a defendant defaults, to obtain a default judgment, a plaintiff must establish that (i) it has validly served the defaulting defendant with the summons and complaint and (ii) "on the law [the plaintiff] is entitled to the relief it requests, given the facts as established by the default." *Solis v. J.P. Maguire Co.*, No. 11-cv-2904, 2012 WL 4060569, at *2 (E.D.N.Y. July 24, 2012) (citation omitted).  "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp.* v. *Murphree*, 326 U.S. 438, 444-445 (1946).

31. Rule 55 of the Federal Rules of Civil Procedure "provides a two-step process for the entry of a judgment against a party that fails to defend: first, the entry of a default, and second, the entry of a default judgment." *Rescia v. Plycon Van Lines, Inc. (In re Donghia, Inc.)*, Nos. 20-30487 (AMN), 22-03007, at *4 (Bankr. D. Conn. July 21, 2022) (internal citations omitted). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment." *In re Fyre Festival LLC*, 611 B.R. 735, 739 (Bankr. S.D.N.Y. 2020) (internal citations omitted).

10

32.  Once the clerk enters an order of default, "the effect … is to deem allegations in a complaint admitted." *Office of W. Martyn Philpot, Jr., LLC v. Day (In re Day)*, No. 14-30950 (JAM), 2016 WL 2893681, at *4 (Bankr. D. Conn. May 12, 2016) (citing *Wells Fargo Bank, N.A., v. Beltran (In re Beltran)*, 182 B.R. 820, 823 (9th Cir. B.A.P. 1995)).  A default is "an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006).

33.  Here, the Trustee served the Defendant with the Summons and the Original Complaint pursuant to applicable law and has put forward sufficiently well-pled allegations on his fraudulent transfer claims set forth in the Amended Complaint.  Accordingly, the Trustee is entitled to a default judgment on such claims.

**B.  <u>Trustee Adequately Served Defendant</u>**

34.  It is well settled that "[a] court may not properly enter a default judgment unless . . . the party against whom the judgment is sought . . . [has] been effectively served with process." *Copelco Cap., Inc. v. Gen. Consul of Bol.*, 940 F. Supp. 93, 94 (S.D.N.Y. 1996) (internal quotation marks omitted).  "Ordinarily, a plaintiff bears the burden of demonstrating that service of process was validly effected." *Khaldei v. Kaspiev*, No. 10 CIV. 8328, 2014 WL 2575774, at *5 (S.D.N.Y. June 9, 2014).

35.  Pursuant to Fed. R. Bank. Pro. 7004(b), service of a summons may be made upon a corporation by first class mail sent to the attention of an officer or agent authorized to receive service of process.  Here, the Defendant was served via first-class U.S. Mail, via UPS or Federal Express overnight delivery, both to its principle place of business as well as to its registered agent for service, as well as by e-mail to its counsel of record.

36.     In addition to satisfying the requirements of the Federal Rules, a plaintiff must comply with the due process requirements detailed in *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306 (1950) when serving process domestically or abroad.  In *Mullane*, the Supreme Court held that service of process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314 (citations omitted).

37.     Here, the Trustee served the Defendant using reliable forms of shipment to its registered office addresses and to its registered agent for service, as well as by e-mail to its counsel of record.  The service effected here thus exceeds requirements of due process.

**C.     Facts in Amended Complaint Establish Trustee's Entitlement to Judgment on Actual Fraudulent Transfer Claims and Unauthorized Postpetition Transfer Claims**

38.     Having established proper service of process, the Trustee is entitled to a default judgment so long as the allegations of the Amended Complaint entitle the Trustee to relief under applicable law.  In carrying out this inquiry, the defendant in default "is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *RCB Equities #3, LLC v. Alma Bldg., LLC*, No. CV 1004, 2012 WL 832263, at *1 (E.D.N.Y. Feb. 22, 2012) (citation omitted); *see also Cadet Funding, LLC v. Hooser*, No. 11 Civ. 1140, 2012 WL 2853189, at *1 (S.D.N.Y. June 29, 2012) (in light of default "well-pleaded allegations in the Complaint concerning issues other than damages must be accepted as true") (citation omitted).

39.     In ruling on a motion for default judgment, the court must draw all reasonable inferences against the party in default. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("[i]n light of [defendant's] default, a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"). Furthermore, the default "effectively constitutes an admission that the damages were proximately caused by the defaulting

party's conduct." *Trs. of the Emoure State Carpenters Welfare Fund v. KE Greer Infrastructure LLC*, No. CV 11-3573, 2012 WL 3929942, at *2-3 (E.D.N.Y. July 30, 2012).

40.     Here, the well-pled allegations of the Amended Complaint establish that the Prepetition Transfers are avoidable and recoverable from the Defendant as actual fraudulent transfers under the Bankruptcy Code and/or applicable New York fraudulent transfer law.  Under section 548(a)(i)(A) of the Bankruptcy Code, "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor . . . made such transfer . . . with actual intent to hinder, delay, or defraud" any creditor.  Similarly, under section 273 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code, the Trustee may stand in the shoes of the Debtor's creditors and avoid any transfer made with "actual intent to hinder, delay or defraud any creditor of the debtor." The Trustee has adequately pled each element of these fraudulent transfer claims.

41.     First, the Trustee has also more than made out a *prima facie* case that GFNY was an alter ego of the Debtor. The Trustee alleged that GFNY was at all times nominally owned by the Debtor's associates and family members; that it shared the same address as other alter egos of the Debtor; and that the Debtor funded the entity through his other alter egos and controlled its funds. *See* Omnibus Alter Ego Adversary Proceeding. The Court confirmed that these allegations were sufficient in denying the GFNY's motion to dismiss. [Omnibus Alter Ego Adversary Proceeding, ECF No. 133 at 29.

42.     Second, the Prepetition Transfers occurred within 2 years before the February 15, 2022 petition date—specifically, in January 2022.  [Am. Compl. ¶ 36, Schedule A].

43.     Third, the Trustee has adequately alleged that the Debtor made the Prepetition Transfers with actual fraudulent intent.  "Because of the difficulty in proving actual intent to

hinder, delay, or defraud in making its case, a party can rely on the 'badges of fraud,' which are 'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'"[8]

> Examples of 'badges of fraud' include, *inter alia*: (1) concealing facts and false pretenses; (2) an unconscionable discrepancy in consideration received in exchange for the value of the property transferred; (3) creating a closely-held corporation for property receipt; (4) closeness in relationship between the parties; (5) retaining the property in question for benefit or use; (6) the financial condition of the transferor and transferee both before and after the transfer(s); (7) repeated patterns or cumulative effect of courses of conduct post-insolvency or financial troubles; and (8) the timeline of events. . . . The transfer of property to a spouse is a 'classic' badge of fraud. . . . Asset shifting to different corporate entities wholly owned or 'so closely assimilated' by the debtor is an additional badge of fraud.[9]

44.     Here, the Trustee has alleged numerous badges of fraud in connection with the Prepetition Transfers, including that (i) they were effectuated using the Debtor's alter ego, GFNY, to make the Prepetition Transfers so he could conceal the transfers from his creditors [Am. Compl. ¶¶ 13, 15, 41, 45, 49]; (ii) the Debtor used GFNY to make the Prepetition Transfers so he could conceal the transfers from his creditors [*id.* ¶¶ 15, 23, 42, 46]; (iii) the Prepetition Transfers helped the Debtor secretly fund his and his own luxurious lifestyle and his clandestine business dealings, while allowing the Debtor to simultaneously claim he owns no material assets (*id.*); (iv) at the time of the Prepetition Transfers, the Debtor was facing significant claims by creditors, including PAX, which sued the Debtor in New York [*id.* ¶¶ 22, 42, 46]; and (v) the Debtor was undercapitalized at

---

[8]   *In re Jie Xiao*, 608 B.R. 126, 157 (Bankr. D. Conn. 2019); *see also In re Andersen*, 166 B.R. 516, 529 (Bankr. D. Conn. 1994) ("In recognition of that reality, courts have held that fraudulent intent may be inferred from the circumstances surrounding the transfer.  Indirect evidence of fraud may consist of the circumstances of the transfer and the conduct and action of the parties to the alleged fraudulent transfer with respect to the possession, management and control of the premises.") (emphasis added).

[9]   *In re Jie Xiao*, 608 B.R. at 157.

14

the time of the Prepetition Transfers [*id.* ¶¶ 42, 46]. "These allegations include three of the six examples of badges of fraud listed in *Kaiser*" and accordingly the Trustee has adequately alleged the Debtor's fraudulent intent. [Adv. Proc. No. 24-05204, ECF No. 40, at 4].

45.     Having demonstrated that the Prepetition Transfers are avoidable as actual fraudulent transfers under the Bankruptcy Code and applicable New York law, the Trustee is able to recover the Prepetition Transfers from the Defendant as their initial transferee under section 550(a)(1) of the Bankruptcy Code. Accordingly, the Trustee is entitled to a judgment against the Defendant in the amount of the Prepetition Transfers, or $59,453.40.

46.     The well-pled allegations of the Amended Complaint further establish that the Postpetition Transfers are avoidable and recoverable from the Defendant pursuant to sections 549 and 550(a) of the Bankruptcy Code as unauthorized postpetition transfers.

47.     Bankruptcy Code section 549 provides, in relevant part, that a trustee may avoid a postpetition transfer of the property of the estate that is not authorized under the Bankruptcy Code or by the court. *See In re Holmes & Bahre Paint & Body, Inc.*, 558 B.R. 58, 64 (Bankr. D. Conn. 2016).

48.     The Trustee has adequately alleged that the Postpetition Transfers made by the Relevant Alter Egos constituted the transfer of property of the Debtor's estate, as the Amended Amended Complaint sufficiently established that the Relevant Alter Egos did not observe corporate formalities, and that the Debtor controlled and had unrestricted access to the Relevant Alter Ego's assets, including commingling the Relevant Alter Ego's assets with his own assets and assets he held through other shell companies. Indeed, this Court has already held—in denying the Relevant Alter Ego's motion to dismiss in the Omnibus Alter Ego Adversary Proceeding—that, as to GFNY, the Trustee has "plausibly alleged the two elements of Alter Ego under Delaware

15

law" and further, as to ACA Capital and Hamilton, has "plausibly alleged facts and circumstances establishing the intent  and its assets be held in trust for the Individual Debtor," such that he "plausibly pled beneficial ownership."  [Adv. Proc. No. 24-05249, ECF No. 133 at 28-30].

49.     The Trustee has also adequately alleged that the Postpetition Transfers were unauthorized.  Am. Compl. ¶ 51.  Additionally, the manner in which these transfers were made (*i.e.*, illicitly, as part of the Debtor's fraudulent shell game via a company beneficially owned by the Debtor) further reflects that they were unauthorized.  *Id.* ¶¶ 51, 52; *see also* Adv. Proc. No. 24-05249, ECF No. 133 at 28-30) (holding that the Trustee plausibly alleged that G Club International was "used to further a shell game and cause[] the [] Debtor's creditors to be hindered, delayed, or defrauded").

50.     Having demonstrated that the Postpetition Transfers were not authorized under the Bankruptcy Code or by the Court and thus avoidable under section 549 of the Bankruptcy Code, the Trustee is entitled to recover them pursuant to section 550(a) of the Bankruptcy Code.  S*ee In re Holmes & Bahre Paint & Body, Inc.*, 558 B.R. 58, 64 (Bankr. D. Conn. 2016).

**D.     <u>Court Should Award Prejudgment and Post-judgment Interest</u>**

51.     The Trustee is also entitled to prejudgment interest starting from February 15, 2024 (the date this adversary proceeding was filed) to present at the February 15, 2024 prime rate of 8.5%, and to post-judgment interest, at the rate set forth in 28 U.S.C. § 1961.

52.     <u>First</u>, post-judgment interest is mandated by 28 U.S.C. § 1961(a), which reads in pertinent part: "interest shall be allowed on any money judgement in a civil case recovered in a district court." Because a bankruptcy court is a "unit" of the district court (28 U.S.C. § 151), 28 U.S.C. § 1961 applies to bankruptcy court judgments. *Pereira v. Private Brands (In re Harvard*

16

*Knitwear)*, 193 B.R. 389, 399 (Bankr. E.D.N.Y. 1996). Accordingly, the Trustee is entitled to post-judgment interest.

53.     Second, prejudgment interest, while not mandatory, is frequently awarded at the discretion of the Court. *See McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (noting courts in this Circuit have held "the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded"); *see also Wickham Contracting Co., Inc. v. Local Union No. 3*, Int'l Bd. of Elec. Workers, AFLCIO, 955 F.2d 831, 833-34 (2d Cir. 1992) (factors relevant to award of prejudgment interest include "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.").

54.     "Most courts find that awarding prejudgment interest in an avoidance action furthers the congressional policies of the Bankruptcy Code by compensating the estate for the time it was without use of the transferred funds." *In re USN Commc'ns, Inc.*, 280 B.R. 573, 602 (Bankr. D. Del. 2002); *see also Coan v. Dunne*, No. 3:15-cv-00050 (JAM), 2021 U.S. Dist. LEXIS 132386, at *68-69 (D. Conn. July 15, 2021) (in entering fraudulent transfer judgment, "prejudgment interest is an element of the plaintiff's complete compensation that aims to make the plaintiff whole").

55.     The Court has discretion in selecting the interest rate to be applied in calculating prejudgment interest, as well as the date from which interest will be calculated. *See Kittay v. Korff (In re Palermo)*, 739 F.3d 99, 107 n.5 (2d Cir. 2014) ("An award of prejudgment interest based on federal law would also afford the district court discretion as to the rate and interval."). While § 1961 establishes the rate of interest that is to be paid "on any money judgment in a civil case

17

recovered in a district court," there is no federal statute that governs the appropriate rate of *prejudgment* interest. "The Court has discretion in the selection of interest rates and may award interest at or above the prime rate." *In re FKF 3, LLC*, 2018 U.S. Dist. LEXIS 183087, at *44-45 (S.D.N.Y. Oct. 24, 2018) (internal citations omitted); *see also See Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004) (the prime rate "reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default.").

56.    Here, the Estate has been deprived of use of the transferred funds, which is among the many harms visited upon creditors by the Debtor's fraudulent shell game, and the Trustee asserts his claims under avoidance statutes serving remedial purposes.  Further, the equities favor the Trustee, a fiduciary to the Debtor's creditors, many of which are victims of the Debtor's fraud. Accordingly, the Court should exercise its discretion and award prejudgment interest at the prime rate as of the date the Original Complaint was filed, which in this case is 8.5%, in addition to post-judgment interest.

[*Remainder of Page Intentionally Left Blank*.]

WHEREFORE, the Trustee respectfully requests that the Motion be granted and that the

Court grant such other and further relief as is just and proper.

Dated: May 11, 2026                              LUC A. DESPINS,
New Haven, CT                          CHAPTER 11 TRUSTEE

By: */s/ Erin T. Ryan*
    Patrick R. Linsey (ct29437)
    Erin T. Ryan (ct32005)
    Douglas S. Skalka (ct00616)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    plinsey@npmlaw.com
    eryan@npmlaw.com
    dskalka@npmlaw.com

    *Counsel for the Chapter 11 Trustee*